No. 22-1757

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

MATTHEW GIBSON,
**Plaintiff-Appellee**
v.

LOUISE E. GOLDSTON, individual
**Defendant-Appellant**

and

COUNTY COMMISSION OF RALEIGH COUNTY, a political subdivision;
JEFF MCPEAKE, individually; BOBBY STUMP, individually, BRIAN WHITE,
Individually

Defendants.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

_____

APPELLANT'S BRIEF
_____

Jennifer E. Tully (WV Bar #9356)
John P. Fuller (WV Bar #9116)
Adam K. Strider (WV Bar #12483)
BAILEY & WYANT, PLLC
500 Virginia Street, East, Suite 600
Post Office Box 3710
Charleston, West Virginia  25337-3710
T: 304.345.4222
F: 304.343.3133
jtully@baileywyant.com
jfuller@baileywyant.com
astrider@baileywyant.com
*Counsel for Defendants-Appellants*

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

### DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 22-1757          Caption: Matthew Gibson v. Louise E. Goldston

Pursuant to FRAP 26.1 and Local Rule 26.1,

Louise E. Goldston
(name of party/amicus)


who is _____ Appellant _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.  Does party/amicus have any parent corporations?                              ☐ YES ☑ NO
    If yes, identify all parent corporations, including all generations of parent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                                        ☐ YES ☑ NO
    If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?          ☐YES ☑NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)          ☐YES ☑NO
     If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?          ☐YES ☑NO
     If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.   Is this a criminal case in which there was an organizational victim?          ☐YES ☑NO
     If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Jennifer E. Tully                              Date:      August 1, 2022

Counsel for: Louise E. Goldston

Print to PDF for Filing

# TABLE OF CONTENTS

<u>Page</u>

TABLE OF AUTHORITIES ................................................... ii

STATEMENT OF JURISDICTION.................................................. 1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ........................... 1

STATEMENT OF CASE ...................................................... 2

SUMMARY OF ARGUMENT ............................................. 10

ARGUMENT ...................................................... 11

  A.  Standard of Review ....................................................11

  B.  The District Court erred in failing to afford Judge Goldston the judicial immunity to which she is entitled, pursuant to *Mireles v. Waco,* 502 U.S.9, 112 S. Ct. 286, 116 L.Ed. 2d 9 (1991) ............................ 13

CONCLUSIONS.................................................... 20

REQUEST FOR ORAL ARGUMENT ..................................21

CERTIFICATE OF COMPLIANCE........................................22

CERTIFICATE OF SERVICE ............................................23

# TABLE OF AUTHORITIES

# CASES

*Al Shimari v. CACI Intern., Inc.,*
  679 F.3d 205, (4th Cir. 2012) .............................................................................. 1

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) .......................... 11, 12

*Black v. West Virginia,*
  No. 3:19-cv-00561, 2019 U.S. Dist. LEXIS 172020, at *12-13
  (S.D. W. Va. Sep. 11, 2019) ............................................................................. 14

*Bradley v. Fisher*,
  80 U.S. 335, 13 Wall. 335, 20 L. Ed. 646 (1872) ........................................... 14

*Charbonnages de France v. Smith,*
  597 F.2d 406 (4th Cir. 1979) ............................................................................ 13

*Chu v. Griffith,*
  771 F.2d 79 (4th Cir. 1985) .............................................................................. 14

*Drewitt v. Pratt,*
  999 F.2d 774 (4th Cir. 1993) ...................................................................... 11, 12

*Felty v. Graves-Humphreys Co.,*
  818 F.2d 1126 (4th. Cir. 1987) ........................................................................ 12

*Forrester v. White,*
  484 U.S. 219, 108 S. Ct. 538, 98 L. Ed. 2d 555 (1988) ...................... 15, 16, 18

*Groves v. Commun. Workers of Am.,*
  815 F.3d 177 (4th Cir. 2016) ............................................................................ 11

*Harlow v. Fitzgerald,*
  457 U.S. 800, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982) ................................ 15

*Hunter v. Town of Mocksville,*
  789 F.3d 389 (4th Cir. 2015), *cert. denied*
  136 S. Ct. 897, 193 L.Ed. 2d 790 (2016) ........................................................ 11

*In re Cruickshanks,*
  220 W. Va. 513, 648 S.E.2d 19 (2007) .............................................................. 7

*In re: Goldston,*
    No. 20-0742, 2021 WL 5370473 (W. Va. Nov. 18, 2021) ........... 6, 7, 17, 18, 19

*King v. Myers,*
    973 F.2d 354 (4th Cir. 1992) ....................................................... 13, 19

*Lemon v. Hong,*
    No. CV ELH-16-979, 2016 U.S. Dist. LEXIS 71756 ...................................... 13

*Mireles v. Waco,*
    502 U.S. 9, 112 S. Ct. 286, 116 L. Ed. 2d 9 (1991) ........... 13, 14, 16, 18, 19, 20

*Mitchell v. Forsyth,*
    472 U.S. 511, 86 L. Ed. 2d 411, 105 S. Ct. 2806 (1985) ................................ 15

*Ross v. Communications Satellite Corp.,*
    759 F.2d 355 (4th Cir. 1985) ....................................................... 12, 13

*Pierson v. Ray,*
    386 U.S. 547, 87 S. Ct. 1213, 18 L. Ed. 2d 288 (1967) ............................ 14, 15

*Plotzker v. Lamberth,*
    No. 3:08-cv-00027, 2008 U.S. Dist. LEXIS 86198, 2008 WL 4706255 .......... 13

*Stump v. Sparkman,*
    435 U.S. 349, 98 S. Ct. 1099, 55 L. Ed. 2d 331 (1978) ...................... 15, 16, 18

*Thacker v. Peak,*
    800 F. Supp. 372 (S.D.W.Va. 1992) ................................................. 12

## **STATUTES**

Fed. R. Civ. P. 56(a) ................................................................ 11

Rule 12(b)(6) of the Federal Rules of Civil Procedure ........................................... 7

United States Code, Title 42, Section 1983 ................................................. 1, 5, 13

United States Code, Title 28, Sections 1331 and 1343 ........................................... 1

W. Va. Code §51-2A-9(b) ................................................................ 19

W. Va. Code § 51-2A-7(a) ................................................................ 19

W. Va. R. Fam. Ct. 8 ................................................................ 9, 17

## STATEMENT OF JURISDICTION

Matthew Gibson, Appellee and Plaintiff below, filed his Complaint, in part pursuant to United States Code, Title 42, Section 1983, alleging that the Appellant and Defendant below, the Hon. Louise E. Goldston, violated his rights against unlawful search and seizure under the Fourth Amendment to the United States Constitution, and his right to free speech under the First Amendment. The United States District Court for the Southern District of West Virginia exercised subject-matter jurisdiction pursuant to United States Code, Title 28, Sections 1331 (federal question jurisdiction) and 1343 (civil rights jurisdiction). On July 13, 2022, the District Court entered a Memorandum Opinion and Order denying the cross motions for summary judgment filed by both parties to this appeal. Because the denial of the Appellant's Motion for Summary Judgment was a denial of absolute judicial immunity, jurisdiction is presently proper in this Court. See *Al Shimari v. CACI Intern., Inc.*, 679 F.3d 205, 221-22 (4th Cir. 2012) (noting that the Court of Appeals may consider and rule on "an interlocutory appeal of a denial of immunity . . . of . . . an ostensibly fact-bound issue that may be resolved as a matter of law. . . .").

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1. Whether the District Court erred in denying absolute judicial immunity to a family court judge who ordered law enforcement personnel to conduct an inspection of the home of a party to a divorce proceeding to discover the presence of property which allegedly should have been turned over to the other party and was not.

2. Whether the District Court erred in denying absolute judicial immunity to a family court judge who ordered a party to a divorce proceeding to cease recording law enforcement's inspection of his home to discover the presence of property which allegedly should have been turned over to the other party and was not, in a state where the recording of family court proceedings is legally prohibited.

## STATEMENT OF CASE

The Appellee and Plaintiff below, Matthew Gibson, was a party to a divorce action in the Family Court of Raleigh County, West Virginia, appearing for final hearing in that matter on or about September 18, 2018. Appellant, and Defendant below, Louise E. Goldston is a Family Court Judge of the 13th Family Court Circuit, based in Beckley, Raleigh County, West Virginia, and presided over Mr. Gibson's divorce hearing. At that hearing, the Court granted the parties a divorce, and adopted a settlement agreement between the parties as to property distribution. JA015 at ¶ 11. Mr. Gibson also alleges that, at that hearing, his ex-wife's attorney, Kyle Lusk, Esq., advised Mr. Gibson against stating that assets subject to distribution are not at his home, because Judge Goldston would go to his house and look. JA017 at ¶ 17.

Mr. Gibson's ex-wife subsequently filed a Petition for Contempt, alleging that Mr. Gibson had not turned over certain items of property as determined in the settlement agreement, or that some items he did turn over were damaged. JA016 at ¶ 14. A hearing on that Petition was held on March 4, 2020, at which Mr. Gibson appeared *pro se*.

In the course of the March 4 hearing, Judge Goldston *sua sponte* recessed the

2

hearing and announced that all parties would reconvene at Mr. Gibson's home to determine whether certain disputed items of property were there. JA017 at ¶ 16. On the approximately ten (10) minute drive from the courthouse to Mr. Gibson's home, he and/or his girlfriend, Sharon Masual, researched how to make a motion to disqualify Judge Goldston. JA183-190. Upon arrival at the Mr. Gibson's home, Mr. Gibson immediately approached Judge Goldston and made the Motion to Disqualify. JA201-204. Thereafter, Judge Goldston realized that Mr. Gibson was attempting to record the interaction, and ordered the recording ceased, noting that this was a hearing, and that family court proceedings may not be recorded. *Digital Media Appendix 1 at 2:50-3:45.*

Mr. Gibson verbally refused to permit any persons present to enter his home without a search warrant. See *id*. Judge Goldston informed him that if he refused entry or refused to cease recording, he would be in contempt of court and would be taken to jail. See *id*. Thereafter, the parties entered Mr. Gibson's home, and Mr. Gibson's ex-wife, Carrie Gibson, was permitted to locate certain items which had been allocated to her in the divorce settlement, but had not been provided to her. JA193-196. Ms. Gibson requested to search for certain items, and the Judge denied that request, permitting her only to retrieve items on the list the location of which she knew. See *id*.; see also *Digital Media Appendix 2* at 2:30-3:00. Ms. Gibson took the items she located which were identified on the property list but not produced.

3

It was plain through the testimony of substantially all involved parties that the interaction at Mr. Gibson's home was approached by all involved as a hearing, and that Judge Goldston was addressed as a judicial officer throughout the entirety of the incident. In addition to the fact that Mr. Gibson and his ex-wife made Motions and accepted the rulings on them, the fact that this was a family court hearing was mutually understood. As with any court hearing, a bailiff was present. Further, the bailiff took a video recording of the interaction, because it was his understanding that all family court hearings are to be recorded. Judge Goldston's Bailiff, Deputy McPeake, testified in key part as follows:

> Q. Would you agree with me that you did more on March 4, 2020, than merely protect the judge's safety or guard the judge inside Mr. Gibson's house?
>
> A. My role there is protecting the judge as I stated. And all of our hearings, all of them, 100 percent of them, are videotaped. I felt as if we were still in a courtroom setting. So I felt that it would be a good idea to video as much as I could. My battery was low. And I would have videotaped start to end.
>
> Q. But you weren't -- you weren't just taking surveillance footage, you were documenting --
>
> A. I was -- I was documenting what people were saying and what people were taking as much as I could.

JA211-214. Deputy White, a Raleigh County Deputy Sheriff called in by Deputy McPeake, testified likewise as follows:

> Q. At some point, did it become apparent to you that the judge was holding a Family Court proceeding inside Mr. Gibson's house?

4

A. I didn't know if it was a court proceeding. I mean, I understood there were people in there were trying to figure out whose property was whose property. I mean, so, you see a judge there, a bailiff there, and then there's parties and they're talking about property, then I figured it was some sort of -- something to do with the Court.

[…]

Q. Okay. You were aware of the fact that you weren't at the Family Court.

A. Was I aware I wasn't at Family Court?

Q. Yeah.

A. Obviously.

Q. Yes. You were at somebody's house.

A. Right.

Q. Somebody's residence.

A. I was.

Q. Did it not seem unusual to you that you -- you're observing what appears to be a Family Court proceeding inside somebody's private residence?

A. It wasn't unusual to me. As far as I was aware, that -- I mean, that's something that they do. I mean, I didn't know.

JA217-220.

Based on the foregoing, Mr. Gibson pled five (5) counts in his Complaint against Judge Goldston, all pursuant to 42 U.S.C. § 1983. First, he alleges an unlawful search and seizure claim in violation of the Fourth Amendment to the

*United States Constitution* for ordering the search of Mr. Gibson's home, allegedly without a warrant. JA027 at ¶ 46 – JA032 at ¶ 62. Second, he alleges violations of the First Amendment for preventing him from video recording the events. JA032 at ¶ 63 – JA036 at ¶ 75. Third, he alleges violations of the Fourteenth Amendment Due Process Clause for allegedly failing to provide him with due process during the contempt hearing. JA037 at ¶ 79 – JA042 at ¶ 88. Fourth, he alleges violations of the Equal Protection Clause of the Fourteenth Amendment via his claims that Judge Goldston's practice of home inspections disadvantaged *pro se* litigants. JA042 at ¶ 89 – JA046 at ¶ 100. Finally, he alleges that Judge Goldston conspired with Defendant Lusk to take the aforementioned actions. JA047 at ¶ 101 – JA049 at ¶ 109.

During the pendency of this matter, the West Virginia Supreme Court of Appeals issued its Opinion in *In re Goldston*, No. 20-0742, 2021 WL 5370473 (W. Va. Nov. 18, 2021), which is the final stage of the judicial disciplinary proceeding arising from the same events as does the instant case. JA123-151. The Supreme Court's topline holdings in *In re Goldston* were that Judge Goldston had caused a "search" of the Mr. Gibson's home, and that she had violated the Code of Judicial Conduct, and ordered the imposition of a censure and a fine. JA116. In holding that the relocation of a hearing concerning items of property involved in a divorce settlement to the Mr. Gibson's home in order to determine whether the property was

6

located there was a "search," rather than a judicial "view," the Supreme Court found it significant that this Defendant allegedly went to the property to "locate" things, rather than merely to observe them. JA141. The Court held that by participating in a "search," which is a quintessentially executive function, Judge Goldston exceeded her authority as a Judge, and thus violated the Code of Judicial Conduct. See *id*.; see also JA116.

Based on those findings, the Court held that a censure and the imposition of a $1,000 fine were the appropriate sanction. See JA116; see also JA151. In reaching this conclusion, the Court analyzed the five factors derived from *In re Cruickshanks*, 220 W. Va. 513, 648 S.E.2d 19 (2007) utilized for gauging the appropriateness of disciplinary sanctions against a judge. Of key applicability to this proceeding, the Court held that this Defendant's actions were (1) related to the administration of justice, and (2) carried out in her public persona (i.e., as a judge). See JA146-148.

Based on the foregoing, Judge Goldston initially filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, asserting absolute judicial immunity. See JA051-091, JA107-113. This Motion was fully briefed. See JA051-113. Following the issuance by the West Virginia Supreme Court of Appeals in *In Re: Goldston*, the District Judge ordered the parties to file supplemental memoranda addressing the impact of In Re: Goldston on their respective positions. Both parties filed the ordered memoranda. See JA115-170. Judge Goldston's

Motion to Dismiss was never ruled on.

Following the close of discovery, both of the parties to this appeal filed cross motions for summary judgment.  See JA171-885.  The Appellant's Motion for Summary Judgment was premised upon the application of judicial immunity to all of the actions upon which Mr. Gibson's Complaint was premised.  See JA171-234. In denying this Motion, the District Court held in summary that because the Appellant allegedly participated in the inspection, rather than simply ordering it, that this placed her actions outside the ambit of judicial immunity.  See JA895.  However, this conclusion rests upon several mischaracterizations of the factual record below.

First, there is no factual basis on the record to conclude that Judge Goldston "participated" in the inspection, or herself seized any property, as erroneously held by the District Court.  See JA895.  Rather, she ordered that Mr. Gibson permit the persons assembled to enter his home, and permitted law enforcement personnel and his ex-wife to locate the items subject to the divorce settlement which were allegedly not turned over.  JA193-200.  In fact, Judge Goldston offered the following unrebutted deposition testimony:

> Q.    However, the Supreme Court stated that "the record is clear that Judge Goldston went to the property to locate things, not simply to observe them." Right?
>
> A.    That is what they found.
>
> Q.    Okay. That's - - that's what the Supreme Court found but you disagree.

8

A.     I think I've already answered that but yes.  I did not go there to locate them.  I went there to allow Mrs. Gibson to retrieve the items she had been awarded.

Q.     Did you - -

A.     And Mister – and only the items that Mr. Gibson had previously testified were still there.

Q.     Okay. But you – you didn't know where they were inside his house, did you?

A.     I did not, and I did not look.

JA193-196.

Second, the District Court improperly construed the point made by Judge Goldston that the fact that the inspection was recorded to be a point in favor of the proceeding being a family court hearing.  JA895.  The District Court improperly concluded this could not be the case because the recording was undertaken by Mr. Gibson, and that Judge Goldston attempted to prevent it.  See *id*.  This is not the recording the Appellant was referring to.  Deputy McPeak, the bailiff, also recorded much of the proceeding.  JA211-214.  Preventing a litigant from recording, while permitting a court official to record, is in accord with West Virginia's family court procedure.  See W. Va. R. Fam. Ct. 8.

Based on the foregoing, as well as the overriding error of law in denying Judge Goldston the judicial immunity to which she is entitled, the Appellant now presents this matter for appeal.

## SUMMARY OF ARGUMENT

The District Court's denial of the Appellant's Motion for Summary Judgment was premised upon an erroneous denial of absolute judicial immunity, and should be reversed for that reason. The Appellant was a West Virginia family court judge faced with a refusal or failure by a party to a divorce property settlement to turn over property to which the other divorcing spouse was entitled. To resolve this issue, Judge Goldston ordered the hearing to reconvene at Mr. Gibson's home, where she ordered Mr. Gibson to allow the parties and law enforcement into the home and allow Mrs. Gibson to retrieve certain items of property at issue.

Judicial immunity covers these actions, because the Appellant quintessentially acted as a judge throughout the proceedings. The proceeding was intended to aide in the resolution of a family court matter which was then before the judge. She conducted herself as a judge throughout, hearing and ruling on motions, and did not herself engage in any part of the search. The parties approached her as a judge, making several motions, and abiding by her rulings. A bailiff was present, who recorded the event. The fact that the West Virginia Supreme Court of Appeals held that she exceeded her authority by being herself present for what it termed to be a search, and disciplined her under the West Virginia Code of Judicial Conduct, does not alter this analysis.

10

As a family court judge, she unquestionably possessed the authority to order the property to be searched for and seized. The fact that she may have exceeded her authority in the process of doing so does not remove the protection of judicial immunity, as has been repeatedly held by the United States Supreme Court. The District Court erred in holding otherwise.

## **ARGUMENT**

### A. Standard of Review.

Federal Circuit Courts of Appeal review a district court's grant or denial of summary judgment de novo. See *Groves v. Commun. Workers of Am.*, 815 F.3d 177, 180-181 (4th Cir. 2016) (quoting *Hunter v. Town of Mocksville*, 789 F.3d 389, 395 (4th Cir. 2015), *cert. denied* 136 S. Ct. 897, 193 L. Ed. 2d 790 (2016)). Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, see *id*., "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id*. (quoting Fed. R. Civ. P. 56(a).

"In assessing a motion for summary judgment all justifiable inferences must be drawn in favor of the nonmoving party for 'credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts.'" *Drewitt v. Pratt*, 999 F.2d 774, 778 (4th Cir. 1993) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). Hence,

11

"the court 'must perform a dual inquiry into the genuineness and materiality of any purported factual issues.'" *Drewitt* at 778 (quoting *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985)).

The substantive law identifies facts that are material. Consequently, "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgement. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson* at 248. "Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice." *Ross* at 364. Therefore, in reviewing the evidence, a judge must determine "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson* at 252. If no genuine issue of material fact exists, the Court has an obligation "to prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Celotex* at 323-24).

Finally, when a party's "state of mind" is a decisive element of a claim or defense, summary judgment is seldom appropriate because "state of mind" determinations usually depend on the credibility of witnesses or the resolution of conflicting inferences drawn from circumstantial or self-serving evidence. *Thacker*

12

*v. Peak*, 800 F. Supp. 372, 376 (S.D.W.Va. 1992) (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979) and *Ross* at 364)). Nevertheless, even if motive is material, summary judgment is not precluded if the claim rests solely on unsupported allegations. *Id*. (citing *Ross* at 365).

**B. The District Court erred in failing to afford Judge Goldston the judicial immunity to which she is entitled, pursuant to *Mireles v. Waco*, 502 U.S. 9, 112 S. Ct. 286, 116 L. Ed. 2d 9 (1991).**

Judge Goldston's actions as alleged by the Appellee should have been afforded the absolute immunity to which the actions of judges acting in that capacity are entitled.

It is well-settled that "judges are absolutely immune from suit for a deprivation of civil rights brought under 42 U.S.C. § 1983" even if such acts were allegedly done maliciously, corruptly, or in bad faith and no matter "how erroneous the act may have been, and however injurious in its consequences [the judicial act] may have proved to the plaintiff." *King v. Myers*, 973 F.2d 354, 356 (4th Cir. 1992) (citations omitted); *Plotzker v. Lamberth*, No. 3:08-cv-00027, 2008 U.S. Dist. LEXIS 86198, 2008 WL 4706255, at *4 (W.D. Va. Oct. 22, 2008) (citations omitted). As stated, "[j]udicial immunity is an absolute immunity: it does not merely protect a defendant from assessment of damages, but also protects a judge from damages suits entirely." *Lemon v. Hong*, No. CV ELH-16-979, 2016 U.S. Dist. LEXIS 71756, 2016 WL 3087451, at *4 (D. Md. June 2, 2016) (citing *Mireles v.*

*Waco*, 502 U.S. 9, 11, 112 S. Ct. 286, 116 L. Ed. 2d 9 (1991)). This long-standing common law doctrine is "for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." *Pierson v. Ray*, 386 U.S. 547, 554, 87 S. Ct. 1213, 18 L. Ed. 2d 288 (1967). Judicial immunity ensures that while a judge's actions are "subject to correction on appeal or other authorized review," they do "not expose him to a claim for damages in a private action, or put him to the trouble and expense of defending such an action." *Chu v. Griffith*, 771 F.2d 79, 81 (4th Cir. 1985). *Black v. West Virginia*, No. 3:19-cv-00561, 2019 U.S. Dist. LEXIS 172020, at *12-13 (S.D. W. Va. Sep. 11, 2019).

The District Court in this matter should have subjected the Appellee's claims herein to summary judgment based on the application of this immunity principle to the undisputed facts on the record. As stated above, judges are generally absolutely immune from suits for money damages. See, e.g., *Mireles v. Waco*, 502 U.S. 9, 9, 112 S. Ct. 286, 116 L. Ed. 2d 9 (1991). "Although unfairness and injustice to a litigant may result on occasion, it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." *Id*. (quoting *Bradley v. Fisher*, 80 U.S. 335, 13 Wall. 335, 347, 20 L. Ed. 646 (1872)) (internal quotation marks omitted).

14

Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages. See *Mitchell v. Forsyth*, 472 U.S. 511, 526, 86 L. Ed. 2d 411, 105 S. Ct. 2806 (1985). Accordingly, judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial. See *Pierson v. Ray*, 386 U.S. 547, 554, 87 S. Ct. 1213, 18 L. Ed. 2d 288 (1967) ("Immunity applies even when the judge is accused of acting maliciously and corruptly"); see also *Harlow v. Fitzgerald*, 457 U.S. 800, 815-819, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982) (allegations of malice are insufficient to overcome judicial immunity).

There are only two sets of circumstances in which judicial immunity is overcome. First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's role as a judge. See *Forrester v. White*, 484 U.S. 219, 227-229, 108 S. Ct. 538, 98 L. Ed. 2d 555 (1988); *Stump v. Sparkman*, 435 U.S. 349, 360, 98 S. Ct. 1099, 55 L. Ed. 2d 331 (1978). Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction. *Stump* at 356-357. This does not mean, however, that judges are liable for actions which are merely beyond their authority. "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority." *Id*. at Syl. Pt. (a). "[W]hether an act by a judge is a 'judicial' one

15

relate[s] to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." *Stump* at 362; see also *Forrester* at 227-229.

The scope of this immunity was addressed at length by the Supreme Court in *Mireles v. Waco*, 502 U.S. 9, 112 S. Ct. 286, 116 L. Ed. 2d 9 (1991). In *Mireles*, a California judge ordered that bailiffs bring an attorney who had failed to appear for the calling of the calendar into the courtroom, and instructed them to use excessive force on him in the process. The Supreme Court held that this action, while certainly violative of the attorney's rights and outside the judge's authority, was not outside his judicial immunity, reasoning as follows:

> Of course, a judge's direction to police officers to carry out a judicial order with excessive force is not a "function normally performed by a judge." *Stump v. Sparkman*, 435 U.S. at 362. But if only the particular act in question were to be scrutinized, then any mistake of a judge in excess of his authority would become a "nonjudicial" act, because an improper or erroneous act cannot be said to be normally performed by a judge. If judicial immunity means anything, it means that a judge "will not be deprived of immunity because the action he took was in error . . . or was in excess of his authority." *Id.*, at 356. See also *Forrester v. White*, 484 U.S. at 227 (a judicial act "does not become less judicial by virtue of an allegation of malice or corruption of motive"). Accordingly, as the language in Stump indicates, the relevant inquiry is the "nature" and "function" of the act, not the "act itself." 435 U.S. at 362. In other words, we look to the particular act's relation to a general function normally performed by a judge, in this case the function of directing police officers to bring counsel in a pending case before the court.

*Mireles* at 12-13.

16

The entire controversy revolves round a single, albeit unsimple, question. Judges are immune from civil suits for damages – so, was Judge Goldston a judge in this scenario? The inescapable conclusion upon a review of the case record is that she was. While it can be argued that she exceeded her authority – and the Supreme Court held as much in *In Re Goldston* – issuing an *ultra vires* order does not remove a judge from the protections of absolute judicial immunity. The record of this case is replete with uncontroverted evidence that she approached the parties to this matter as a judge, and that they approached her as a judge.

The parties convened at the Mr. Gibson's home in response to an order issued from the bench in an effort to resolve a property dispute in a contested divorce proceeding. The proceeding was attended by a bailiff, who recorded the interaction while non-court personnel were prohibited from recording in accordance with Family Court Rule 8. See W. Va. R. Fam. Ct. 8. While the District Court discounted the recording of the incident on the basis that Judge Goldston attempted to prevent *Mr. Gibson* from recording it, this is not the recording which inures in favor of judicial immunity. JA895. Rather, it was *Deputy McPeake's recording*, as the bailiff, which weighs in favor of judicial immunity. JA211-214. Preventing a litigant from recording pursuant to Family Court Rule 8 does not suggest any diversion from regular family court proceeding.

Upon arrival, Mr. Gibson made a motion to disqualify the Judge and/or for her to recuse herself. Later in the proceedings, the Mr. Gibson's ex-wife made a motion to be permitted to search the home for items she did not know the location of. These motions were denied, and the parties abided by the Judge's rulings. After the interaction at the Mr. Gibson's home concluded, the parties returned to the Courthouse to continue proceedings, in which the judge discussed what had occurred at the Mr. Gibson's home on the case record. JA197-200. Clearly, irrespective of her authority to act as she did, Judge Goldston approached this situation as a judge, and the parties reacted to her as a judge. This is significant because a key consideration in the judicial immunity analysis is "the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." *Stump* at 362; see also *Forrester* at 227-229.

The Supreme Court's rulings in *In Re Goldston* only reinforce this conclusion. The West Virginia Supreme Court of Appeals specifically noted that a Family Court Judge may order the search for and seizure of property in order to secure compliance with a prior order. JA135-136. Her attendance at the alleged "search" can at worst be characterized as an *ultra vires* act in pursuit of a legitimate judicial end – a thing which, under *Mireles*, is within a judicial role and protected by judicial immunity. The record shows that she herself did not participate in the search, but rather simply was present for it, and continued to act judicially – hearing motions and issuing

18

orders to the parties and law enforcement – throughout the purported search. JA193-196.

The District Court in fact lays out a standard in a footnote which highlights exactly how neatly this case fits in the lineage of *Mireles*, while perplexingly coming to the opposite conclusion:

> As our Court of Appeals observed decades ago, the dividing line between unprotected usurpations of power on the one hand, and protected mistaken exercises of limited power on the other, is divined by answering a single question: "When a judge exceeds authority, was . . . she entirely devoid of power [and hence deprived of immunity] or was a power lawfully possessed wrongly exercised [, in which case immunity holds]?" *King v. Myers*, 973 F.2d 354, 357 (4th Cir. 1992).

JA896 at note 3. As noted by the West Virginia Supreme Court of Appeals in *In Re Goldston*, family court judges have the express statutory authority to compel compliance with a distribution of marital property by ordering the property to be located and seized.[1]  JA135-136. It is apparent that had Judge Goldston merely ordered from the bench that Deputies McPeake and White go to the Appellee's home and secure the property at issue, while she awaited their return at the courthouse, there would be no controversy that she acted within her legal ambit. It is her personal

---

[1] See W. Va. Code § 51-2A-9(b) ("A family court judge may enforce compliance with his or her lawful orders with remedial or coercive sanctions designed to compensate a complainant for losses sustained and to coerce obedience for the benefit of the complainant… Sanctions may include, but are not limited to, seizure or impoundment of property to secure compliance with a prior order."); see also W. Va. Code § 51-2A-7(a) ("[T]he family court judge has the authority to… (4) Compel and supervise the production of evidence…").

presence at the home and interaction with the Parties while the property was located that allegedly causes the departure from her authorized sphere of action. This is plainly a "power lawfully possessed wrongly exercised." It is too akin to a power she may legitimately exercise for her to have been "entirely devoid of power." The District Court simply came down on the wrong side of this question.

This conclusion is also supported by the West Virginia Supreme Court of Appeals' holdings that Judge Goldston's actions were related to the administration of justice, and carried out in her public persona (i.e., as a judge). JA148. While the Court held that for a judge to take part in a search was to act "as an adjunct law enforcement officer," it held that for a judge to do this exposed them to professional discipline under the Code of Judicial Conduct, which applies only to judges. See *id.*

It is apparent from careful review of the case record and applicable authorities that Judge Goldston's actions fell within the scope of absolute judicial immunity, as they are delineated in *Mireles*. The District Court's denial of this immunity in a context in which it clearly applies was in error and requires reversal.

## **RELIEF SOUGHT**

**WHEREFORE**, based on the foregoing, the Appellant, the Hon. Louise E. Goldston, respectfully prays this Honorable Court REVERSE the District Court's denial of her Motion for Summary Judgment, that this Court find that she is entitled to absolute judicial immunity, and grant her such other relief as the Court deems just and proper.

## <u>REQUEST FOR ORAL ARGUMENT</u>

Pursuant to Rule 34(a) of the *Federal Rules of Appellate Procedure*, Appellant

Louise E. Goldston respectfully requests that this Court grant her oral argument on

the issues presented by this appeal.

    /s/   **John P. Fuller**      
**Jennifer E. Tully (WV Bar #9356)**
**John P. Fuller (WV Bar #9116)**
**Adam K. Strider (WV Bar #12483)**
**BAILEY & WYANT, PLLC**
**500 Virginia Street, East, Suite 600**
**Post Office Box 3710**
**Charleston, West Virginia 25337**
**T: 304.345.4222**
**F: 304.343.3133**
**jtully@baileywyant.com**
**jfuller@baileywyant.com**
**astrider@baileywyant.com**

## <u>CERTIFICATE OF COMPLIANCE</u>

1. This brief complies with the type-volume limitation of F. R. App. P. 28.1(e)(2) because it contains a total of 5,233 words, omitting excludable portions.

2. This brief complies with the typeface using requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a) because it has been prepared in 14-Point Times New Roman font text using Microsoft Office.

 /s/   John P. Fuller_____
**Jennifer E. Tully (WV Bar #9356)**
**John P. Fuller (WV Bar #9116)**
**Adam K. Strider (WV Bar #12483)**
**BAILEY & WYANT, PLLC**

## <u>CERTIFICATE OF SERVICE</u>

   **I HEREBY CERTIFY** that a true and correct copy of foregoing
**"APPELLANT'S BRIEF AND JOINT APPENDIX"** was served upon the
following parties through the Court's Electronic Case Filing (ECF) system and by
U.S. Mail on this day, October 21, 2022:

John H. Bryan (WV Bar #10259)
John H. Bryan, Attorney at Law
411 Main Street
P.O. Box 366
Union, WV 24983
T: 304.772.4999
F: 304.772.4998
jhb@johnbryanlaw.com
*Counsel for Plaintiff-Appellee*

**/s/ John P. Fuller**
**Jennifer E. Tully (WV Bar #9356)**
**John P. Fuller (WV Bar #9116)**
**Adam K. Strider (WV Bar #12483)**
**BAILEY & WYANT, PLLC**
**500 Virginia Street, East, Suite 600**
**Post Office Box 3710**
**Charleston, West Virginia 25337-3710**
**T: 304.345.4222**
**F: 304.343.3133**
jtully@baileywyant.com
jfuller@baileywyant.com
astrider@baileywyant.com
*Counsel for Defendants-Appellants*