No. 22-1757

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

MATTHEW GIBSON,
Plaintiff-Appellee
v.

LOUISE E. GOLDSTON, individual
Defendant-Appellant

and

COUNTY COMMISSION OF RALEIGH COUNTY, a political subdivision;
JEFF MCPEAKE, individually; BOBBY STUMP, individually, BRIAN
WHITE, Individually

Defendants.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY
_____

APPELLANT'S REPLY BRIEF
_____

Jennifer E. Tully (WV Bar #9356)
John P. Fuller (WV Bar #9116)
Adam K. Strider (WV Bar #12483)
BAILEY & WYANT, PLLC
500 Virginia Street, East, Suite 600
Post Office Box 3710
Charleston, West Virginia  25337-3710
T: 304.345.4222
F: 304.343.3133
jtully@baileywyant.com
jfuller@baileywyant.com
astrider@baileywyant.com
*Counsel for Defendants-Appellants*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  . . . . . . . . . . . . . .ii

REPLY ARGUMENTS …………………………………... . . . . . . . . . . . . . 1

     A.    Contrary to the Appellee's misconstruction of the factual record in his Response Brief, the Appellant did not participate in efforts to search for or locate property in the Appellee's Home……………………………1

     B.    The Appellee's reliance on *Lo-Ji Sales, Inc. v. New York,* 442 U.S. 319, 99 S. Ct. 2319, 60 L. Ed. 2d 920 (1979), is misplaced, as judicial immunity was not in issue in that case, and the case is factually distinguishable in material ways………………………………………1

     C.    Based on the record and applicable case law, Judge Goldston did not act in the absence of all jurisdiction………………………………..7

     D.    The West Virginia Supreme Court of Appeals' opinion in *In Re Goldston* has no preclusive effect as to questions of law in this matter………………………………………………………………..12

RELIEF SOUGHT………………………………………………………...18

CERTIFICATE OF COMPLIANCE…………………………………………...20

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>

*Blonder-Tongue Labs, Inc. v. University of Illinois Foundation,*
    402 U.S. 313, 333-334, 28 L. Ed. 2d 788, 91 S. Ct. 1434 (1971)……………..14

*Fate v. Dixon,*
    649 F. Supp. 551, 559 (E. D. N. C. 1986)………………………………………..13

*Forrester v. White,*
    484 U.S. 219, 227-229, 108 S. Ct. 538, 98 L. Ed. 2d 555 (1988)……..…...16, 17

*Guiden v. Southeastern Public Service Authority,*
    760 F. Supp. 1171 (E. D. Va. 1991)……………………………….……….16

*Heller v. New York,*
    413 U.S. 483, 93 S. Ct. 2789, 37 L. Ed. 745 (1973)…………...………………6

*In re: Goldston,*
    No. 20-0742, 2021 WL 5370473 (W.Va. Nov. 18, 2021)....12, 13, 14, 15, 17, 18

*In re: Varat Enters., Inc.,*
    81 F.3d 1310, 1315 (4th Cir. 1996)……………………………….……………13

*Jack Faucett Associates v. American Telephone and Telegraph Co.,*
    240 U.S. App. D.C 103, 744 F.2d 118, 125 (D.C. Cir. 1984), *cert. denied*
    469 U.S. 1196, 105 S. Ct. 980, 83 L. Ed. 2d 982…………...…………………14

*Johnson v. United States,*
    333 U.S. 10, 14, 68 S. Ct. 367, 92 L. Ed. 436 (1948)………...……….………5

*Kendall v. C.F. Industries, Inc.,*
    624 F. Supp. 1102 (N.D.Ill. 1986)……………………………………….……16

*King v. Myers,*
    973 F. 2d 354, 357 (4th Cir. 1992)……………………………………..8, 9, 10

*Lo-Ji Sales, Inc. v. New York,*
    442 U.S. 319, 99 S. Ct. 2319, 60 L. Ed. 2d 920 (1979)…. . . . . . . . 1, 2, 3, 4, 5, 6

*Lopez v. Vanderwater,*
  620 F.2d 1229 (7th Cir.), *cert. dismissed*
  449 U.S. 1028 1980)…………………………………………………………10, 11

*Mireles v. Waco,*
  502 U.S. 9, 11, 112 S. Ct. 286, 116 L. Ed. 2d 9 (1991)………………………..17

*Montana v. United States,*
  440 U.S. 147, 153, 99 S. Ct. 970, 59 L. Ed. 2d 210 (1979)……………………13

*New Hampshire v. Maine,*
  532 U.S. 742, 748, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001)………………..12

*Packer v. Hayes,*
  79 Fed. Appx. 573 (4th Cir. 2003)….……………………………………………..15

*Ramsay v. INS,*
  14 F.3d 206, 210 (4th Cir. 1994)……………...…………………………………13, 18

*Ridley v. Leavitt,*
  631 F. 2d 358 (4th Cir. 1980)………………………………………………………..15

*Stump v. Sparkman,*
  435 U.S. 349, 360, 98 S. Ct. 1099, 55 L. Ed. 2d 331 (1978)……8, 9, 10, 16, 17

## STATUTES

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15

W. Va. Code §51-2A-9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6, 7, 11

W. Va. Code § 51-2A-7(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1, 6, 7, 11

West Virginia Code of Judicial Conduct Rules
    1.1, 1.2, 1.3, 2.2, 2.4(A), 2.4(B), and 2.5 . . . . . . . . . . . . . . . . . . . . . . . .14, 18

West Virginia Rules of Judicial Disciplinary Procedure . . . . . . . . . . . . . . . . . . . . . 14

## REPLY ARGUMENTS

**COMES NOW** the Appellant, Defendant below, Louise E. Goldston, and submits for this Honorable Court's review the following arguments in reply to the Appellee's Brief.

**A. Contrary to the Appellee's misconstruction of the factual record in his Response Brief, the Appellant did not participate in efforts to search for or locate property in the Appellee's home.**

With respect to the Appellee's contention that Judge Goldston herself participated in efforts to locate items in the Appellee's home, he hangs his rhetorical hat on a single moment in the video recording taken by Deputy McPeake, which is materially misconstrued in the Response Brief. See Response Brief at 20. The video footage does not, in fact, show Judge Goldston searching for DVD's, and does not transform her conduct from judicially compelling the production of property wrongfully withheld in a divorce settlement pursuant to W. Va. Code §§ 51-2A-9(b) and 51-2A-7(a) at the scene into searching herself. See *Digital Media Appendix 2* at 3:10 to 7:18. The referenced video portion merely shows Judge Goldston being physically present while Mrs. Gibson searched for DVD's. See *id*. As the Appellee has not identified any other action that he contends constitutes 'searching for items', the point stands that Judge Goldston did not herself engage in any actual searching.

**B. The Appellee's reliance on *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 99 S. Ct. 2319, 60 L. Ed. 2d 920 (1979), is misplaced, as judicial immunity**

1

**was not in issue in that case, and the case is factually distinguishable in material ways.**

The Appellee's argument relies heavily on *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 99 S. Ct. 2319, 60 L. Ed. 2d 920 (1979), a United States Supreme Court case which concerned an appeal of a denial of a motion to suppress the results of a search warrant. He contends that this case and its progeny compel the conclusion that the presence of a judge at the scene of a search constitutes an abdication of the judicial role in a judicial immunity context. To the contrary, *Lo-Ji*'s shadow is not so long.

As judicial immunity was not at issue in *Lo-Ji*, being an appeal of a criminal case rather than a civil suit for damages, it and its progeny cannot be considered controlling in this matter. *Lo-Ji*'s only potential application to the Appellee's situation would be argue that the items recovered as a result of this interaction are inadmissible as criminal evidence against him. As the Appellee has never been charged criminally in connection with this matter, it is difficult to imagine the relevancy of this point. Further, the case is eminently factually distinguishable because, as addressed in foregoing sections, Judge Goldston did not participate in search functions, but merely issued ongoing judicial orders while the property at issue was recovered by the parties and law enforcement officers.

In *Lo-Ji*, a New York Town Justice was presented with two (2) films purchased from Lo-Ji by a police investigator, which the investigator believed to violate state obscenity laws. See *Lo-Ji*, 442 U.S. at 321. The investigator's affidavit in seeking the search warrant also claimed that other materials violating obscenity laws could be found at the store, and requested that the Justice accompany him to the store to determine whether additional obscene materials were present. See *id*. After viewing the films and believing they did, the Justice issued a warrant to search the store. See *id*. In the course of the search of the store, the Justice reviewed videos on coin-operated projectors and inspected written materials after removing their plastic wrappers. See *id*. at 322. He then ordered items he deemed obscene and "similar items" seized. *Id*.

The owner of the store was criminally charged under state obscenity laws, and moved to have the fruits of the search suppressed, claiming that the search violated the First, Fourth, and Fourteenth Amendments. See *id*. at 324. The motion was denied and appealed, and eventually came before the United States Supreme Court. The Supreme Court held, in relevant part, that the "Town Justice did not manifest that neutrality and detachment demanded of a judicial officer when presented with a warrant application for a search and seizure." *Id*. at 326. This was because by "not acting as a judicial officer but as an adjunct law enforcement officer," thus assuming the adversarial role of law enforcement in criminal investigation and prosecution, he

abdicated his veneer of impartiality. *Id*. Because the presumptive validity of search warrant depends on being "authorized by a neutral and detached judicial officer," the loss of the Justice's air of neutrality also contributed to the search warrant's loss of validity. *Id*.

At no point in *Lo-Ji* did the Supreme Court address the question of absolute judicial immunity. Judicial immunity is a civil doctrine applied in suits for money damages – it has no application in a criminal case like *Lo-Ji*. *Lo-Ji*'s conclusion that the Justice's participation in the execution of a search warrant operated to suppress the introduction of the discovered evidence says nothing of whether that Justice would have been entitled to judicial immunity had the store owner filed a civil suit against him. A search of available case law revealed no federal or state cases which have relied on *Lo-Ji* to deny judicial immunity. That case and its progeny simply ask and answer different questions than those which appear before the Court in this matter.

The case now before this Court is also factually distinguishable in a number of key ways. First, the Justice in *Lo-Ji* inarguably participated in the search. He personally inspected the items in the shop, and made on-scene determinations of which items were obscene and should be seized. He looked through the shop, and viewed videos and written materials pre-seizure to determine whether they were within the scope of the search warrant. This case shows no such participation –

4

merely presence at the scene, and continuing adjudication of motions brought before the judge. The only point at which the Appellee disputes this conclusion is his claim that Judge Goldston "searched" for DVD's. As discussed in foregoing sections, this is a mischaracterization of segment of Deputy McPeake's video being referred to. See *supra* § A. The Court can capably review the video and judge for itself whether Judge Goldston performed any "searching" in that interaction, but it should be apparent upon such review that she merely observed Mrs. Gibson and law enforcement officers searching, and ruled on motions and resolved disputes on scene instead of from the courthouse. This is a far cry from the level of involvement exhibited in *Lo-Ji*.

Further, the reason that the Judge's participation in the search in *Lo-Ji* was considered to have deviated from the role of a judge is rooted in entirely criminal concerns. As discussed above, federal courts have long recognized that a valid search warrant requires issuance by a neutral and detached magistrate, to temper the "often competitive enterprise of ferreting out crime" in which law enforcement officers engage. *Johnson v. United States*, 333 U.S. 10, 14, 68 S. Ct. 367, 92 L. Ed. 436 (1948). There was no 'ferreting out of crime' to be done here, as this was not a criminal case. No person involved was on the hunt for evidence of criminal activity. Rather, the persons present were there to compel the production of unproduced property subject to a divorce decree, which is an express power of West Virginia

5

Family Court Judges.  See W. Va. Code § 51-2A-9(b) ("A family court judge may enforce compliance with his or her lawful orders with remedial or coercive sanctions designed to compensate a complainant for losses sustained and to coerce obedience for the benefit of the complainant… Sanctions may include, but are not limited to, seizure or impoundment of property to secure compliance with a prior order."); *see also* W. Va. Code § 51-2A-7(a) ("[T]he family court judge has the authority to… (4) Compel *and supervise* the production of evidence…") (Emphasis added). Irrespective of what the common law may consider to be a traditional judicial function, West Virginia statute declares in no uncertain terms that compelling and supervising the production of evidence is a function of a family court judge.  See *id*. Thus, the underlying principles which led to the Supreme Court's ruling in *Lo-Ji* are completely absent here, and it should not be considered controlling.

Mere presence by a judge at the scene of a search has never been held to remove the cloak of judicial immunity, nor even to compel the same conclusion as was reached in *Lo-Ji*.  This contrast is shown by the Supreme Court's ruling in *Heller v. New York*, 413 U.S. 483, 93 S. Ct. 2789, 37 L. Ed. 2d 745 (1973), another New York obscenity case that found its way to the Supreme Court.  In *Heller*, a New York criminal court judge purchased a movie ticket at a theater.  *Id*. at 485.  Upon viewing the movie, he deemed it to be obscene, and issued a warrant for a seizure of a copy of the film as evidence in a prosecution of the proprietor.  See *id*.  The fact that the

judge went to the theater and viewed the movie himself did not invalidate his warrant, nor did any Court find that he acted nonjudicially. See *id*. at 488-489. There is thus a clear distinction between engaging in actual search functions and merely being present as an observer.

The record shows plainly that Judge Goldston did not engage in search functions. Rather, she engaged in judicial functions, such as ordering wrongfully-withheld property to be turned over, ruling on motions by the parties, and supervising the production of evidence, as she is statutorily empowered to do. See, e.g., JA 177; see also W. Va. Code §§ 51-2A-9(b); 51-2A-7(a), *supra*. No act shown on the case record took Judge Goldston outside the bounds of judicial immunity, and the District Court thus erred in refusing to grant summary judgment.

## C. Based on the record and applicable case law, Judge Goldston did not act in the absence of all jurisdiction.

The Appellee's argument that Judge Goldston acted in the absence of all jurisdiction is flawed both because it rests upon a premise that is not established – namely, that she participated in a search rather than merely overseeing the compelled production of property subject to distribution – and because it takes a mistaken view of the scope of jurisdiction.

First, as addressed in prior sections of this Brief, there is simply not evidence on the case record to suggest that Judge Goldston herself performed searching

functions rather than merely supervising the compelled production of property. The Appellee's attempt to point out an instance of such conduct – that Judge Goldston allegedly searched for DVD's – is plainly shown by Deputy McPeake's video recording to prove no such thing. See *supra* § A. Because no other specific instances of conduct are claimed to be actual searching activity rather than mere oversight and supervision of the production of evidence and distribution of property, it should follow that Judge Goldston did not engage in a "search" so far outside her proper oversight role as to be considered nonjudicial.

Second, the actions which are shown on the record and in the video recordings were not in the complete absence of all jurisdiction. The Appellee's brief somewhat conflates the two elements of the test for overcoming judicial immunity. The jurisdictional prong is concerned with subject matter and geographic jurisdiction. Whether an act at issue properly belongs to a judge is covered by the first prong. The jurisdictional test deprives a judge of judicial immunity where "there is clearly no jurisdiction over the subject-matter . . . [and] the want of jurisdiction is known to the judge . . . ." *King v. Myers*, 973 F.2d 354, 357 (4th Cir. 1992) (quoting *Stump v. Sparkman*, 435 U.S. 349, 357, 55 L. Ed. 2d 331, 98 S. Ct. 1099 (1978)) (internal quotation marks omitted). The relevant question under this prong is "whether at the time [the judge] took the challenged action he had jurisdiction over the subject matter before him." *Id*. "[I]n answering that question, the scope of the judge's jurisdiction

must be construed broadly[.]" *Id*. (Internal citations and quotations omitted). A judge does not act in the complete absence of all jurisdiction even where the "exercise of authority is flawed by the commission of grave procedural errors." *Id*.

The illustration of a judge acting in the absence of all jurisdiction which is repeatedly employed, including in the Appellee's Brief, is that of a probate judge with jurisdiction only over wills and estates attempting to oversee a criminal prosecution. See, e.g., *Stump*, 435 U.S. at 357. Authority over that subject matter is completely denied to the judge in that circumstance. In contrast, Judge Goldston, as a Family Court Judge, has express jurisdiction over the distribution of property pursuant to a divorce decree, and express authority to compel and supervise the production of the same.

The distinction is plainly shown by this Court's discussion of the relevant principles in *King v. Myers*, cited *supra*. In *King*, this Court addressed the instance of a Virginia Magistrate who ordered the warrantless arrest of a party to a divorce proceeding. *King*, 973 F.2d at 355. After Ms. King changed the locks on the house and denied her ex-husband and daughters access to collect the daughters' belongings, Magistrate Myers telephoned Ms. King and asked to arrange a time when the daughters could collect their property. See *id*. At the agreed time, a police officer arrived without a warrant and told Ms. King that he had been ordered to bring her to Magistrate Myers' office. See *id*. at 355-356. Once there, Magistrate Myers

informed Ms. King that she was being charged with assault and battery, as well as

child neglect for locking her daughters out of the house.  See *id*. at 356.  The charges

were later *nolle prossed*.  See *id*.

Ms. King subsequently filed suit against several involved parties, including

Magistrate Myers.  See *id*.  In response to the assertion of judicial immunity, Ms.

King argued that, under Virginia law, only law enforcement officers are empowered

to make warrantless arrests, Magistrate Myers had usurped an executive branch

function by ordering her arrest without issuing an arrest warrant.  See *id*. at 357.  In

rejecting this argument, this Court reasoned as follows:

> The boundaries of a magistrate's authority to issue process of arrest may
> well have been overstepped, perhaps even widely, in the instant
> circumstances. However, Magistrate Myers has jurisdiction to arrange,
> albeit with a warrant, for the arrest of those as to whom a complaint of
> criminal conduct has been made, and the law officer whom she directed
> to bring King in has the authority to make warrantless arrests under
> certain circumstances. In addition, the subject matter of alleged
> criminal conduct in the context of a domestic relations dispute is an area
> over which magistrates have jurisdiction. Moreover, we are obligated
> to construe the scope of her jurisdiction broadly. See *Stump v.
> Sparkman*, 435 U.S. at 356. Therefore, we cannot conclude that
> Magistrate Myers acted in the "clear absence of all jurisdiction over the
> subject matter."

*King*, 973 F.2d at 357.

This Court supported this conclusion with reference to *Lopez v. Vanderwater*,

620 F.2d 1229 (7th Cir.), *cert. dismissed*, 449 U.S. 1028 (1980).  In *Lopez*, the

Seventh Circuit held that an Illinois judge did not act "in the clear absence of all

10

jurisdiction" when he arraigned, convicted, and sentenced a defendant outside of a courtroom, in a police station housed in a branch of the court to which he was not assigned, and in a case to which he was not assigned. See *id*. at 1234. The *Lopez* Court held that while he may have acted "in excess" of his jurisdiction by acting on a case without assignment, he did not act in the clear absence of all jurisdiction, because as an Illinois criminal court judge, he did have jurisdiction over the general subject matter of the case. *Id*.[1]

Likewise, Judge Goldston has jurisdiction over the subject matter at issue in the underlying matter. She is a West Virginia Family Court Judge based in Raleigh County, West Virginia. She has unquestionable jurisdiction over a property distribution in a Raleigh County divorce, especially one to which she was assigned as judge. She has specific statutory power to "enforce compliance with his or her lawful orders with remedial or coercive sanctions" such as "seizure or impoundment of property" and to "[c]ompel and supervise the production of evidence…" W. Va. Code §§ 51-2A-9(b); 51-2A-7(a). As highlighted by *Lopez*, *supra*, it is immaterial to this question whether the acts were undertaken inside or outside of a courtroom. As her jurisdiction over the subject matter of the proceedings at issue is beyond

---

[1] The judge in *Lopez* was denied judicial immunity for certain acts, including deciding to charge, determining the charge to be brought, and preparing charging documents, as these were determined to be prosecutorial rather than judicial functions. See *Lopez*, 620 F.2d at 1235. However, the jurisdictional prong was not held to have been violated.

question, Judge Goldston cannot be denied judicial immunity under the jurisdictional prong, and the District Court's holding to the contrary should be reversed.

### D. The West Virginia Supreme Court of Appeals' opinion in *In Re Goldston* has no preclusive effect as to questions of law in this matter.

The Appellee contends in his Response Brief that the West Virginia Supreme Court of Appeals' decision in *In Re Goldston* should be held preclusive of any attempt by Judge Goldston to assert judicial immunity, or to claim that she did not participate in search functions outside the judicial role. It should first be noted that the District Court did not base any of its holdings on an application of any preclusion doctrine. J.A. 886-904. Nonetheless, this cannot be the case, because absolute judicial immunity was not at issue in that matter. *In Re Goldston* is inapplicable.

*Res judicata* takes two overarching forms: claim preclusion, and issue preclusion. First, claim preclusion has no bearing on this appeal. Under claim preclusion, a final judgment forecloses "successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." *New Hampshire v. Maine*, 532 U.S. 742, 748, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001). *In Re Goldston* did not concern the same claims that are at issue in this case. It was a judicial disciplinary proceeding, and this is a 42 U.S.C. § 1983 claim for alleged violations of the First, Fourth, and Fourteenth Amendments, as well as a civil

conspiracy claim. None of those causes of action were adjudicated by the Supreme Court in *In Re Goldston*, and therefore claim preclusion would be entirely inappropriate.

Nor are the issues the Appellee asserts so precluded. Issue preclusion, or collateral estoppel, "operates to bar subsequent litigation of those legal and factual issues common to both actions that were 'actually and necessarily determined by a court of competent jurisdiction' in the first litigation.'" *In re Varat Enters., Inc.*, 81 F.3d 1310, 1315 (4th Cir. 1996) (quoting *Montana v. United States*, 440 U.S. 147, 153, 99 S. Ct. 970, 59 L. Ed. 2d 210(1979)). Collateral estoppel applies only if: (1) the issue sought to be precluded is identical to the issue previously litigated; (2) the issue must have been actually litigated and determined in the prior proceeding; (3) the issue must have been necessary to the prior proceeding's decision; (4) the prior judgment must be final and valid; and (5) the party against whom preclusion is sought must have had a full and fair opportunity to litigate the issue in the previous suit. See *Ramsay v. INS*, 14 F.3d 206, 210 (4th Cir. 1994).

Courts are especially cautious about applying collateral estoppel where such estoppel is used offensively, as the Appellee is attempting to do here. In such cases, Courts are exhorted to use "'special care' to ensure that preclusion will not lead to unjust results." *Fate v. Dixon*, 649 F. Supp. 551, 559 (E. D. N. C. 1986). "Fairness to the defendant" is a critical finding necessary to the application of offensive

collateral estoppel. *Jack Faucett Associates v. American Telephone and Telegraph Co.*, 240 U.S. App. D.C. 103, 744 F.2d 118, 125 (D.C. Cir. 1984), *cert. denied* 469 U.S. 1196, 105 S. Ct. 980, 83 L. Ed. 2d 982. "As so often is the case, no one set of facts, no one collection of words or phrases, will provide an automatic formula for proper rulings on estoppel pleas. In the end, decision will necessarily rest on the trial courts' sense of justice and equity." *Blonder-Tongue Labs, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 333-334, 28 L. Ed. 2d 788, 91 S. Ct. 1434 (1971).

*In Re Goldston* was a judicial disciplinary proceeding, conducted under the West Virginia Code of Judicial Conduct ("CJC") and West Virginia Rules of Judicial Disciplinary Procedure ("RJDP"). In its ruling, the West Virginia Supreme Court of Appeals affirmed the Judicial Hearing Board's conclusion that Rules 1.1, 1.2, 1.3, 2.2. 2.4(A), 2.4(B), and 2.5 of the Code of Judicial Conduct had been violated by the conduct at issue in this case. In that determination, the Court stated that the incident occurring at the Appellee's home was a "search," which is a power of the executive branch of government, rather than a judicial "view." It held that in doing so, the Appellant performed an act that was outside her authority as a judge. The Appellee argues that these conclusions collaterally estop her from claiming absolute judicial immunity. It should be apparent from a review of the applicable standard that this is not the case.

In this case, a minimum of four (4) elements of the collateral estoppel standard

are unmet by the Plaintiff's argument.  First, the issues sought to be precluded are not identical to any issue adjudicated in *In Re Goldston*.  Elements 2, 3, and 5 are therefore also unmet, because the same issue we address in this matter was not addressed by the Court in *In Re Goldston*.

The mere commonality of an operative set of facts is not sufficient to invoke collateral estoppel.  Many Courts, including those of this Circuit, have held that where the referenced prior proceeding applied identical facts to a different legal standard, collateral estoppel was not appropriate.  In *Ridley v. Leavitt*, 631 F.2d 358 (4th Cir. 1980), this Court addressed a collateral estoppel defense asserted against a § 1983 excessive force claim by an inmate.  The defendants therein asserted that because the plaintiff had been previously convicted of assaulting the prison guards in the same interaction, that it was already established that he was the aggressor in the interaction, and that the excessive force claim was therefore precluded.  See *id*. at 359.  The Court disagreed, holding that the fact that the plaintiff was the initial aggressor does not foreclose the possibility that the correctional officers responded with excessive force – a question which was not at issue in the criminal proceeding.  See *id*. at 359-360.  An identical conclusion was reached in *Packer v. Hayes*, 79 Fed. Appx. 573 (4th Cir. 2003) (holding that state court assault conviction of an inmate against a correctional officer did not preclude excessive force claim by the inmate regarding the same interaction).

15

Likewise, in *Guiden v. Southeastern Public Service Authority*, 760 F. Supp. 1171 (E. D. Va. 1991), the Eastern District of Virginia engaged in a multi-state case law survey to conclude that a prior denial of unemployment compensation upon a finding that the plaintiff was terminated for "misconduct" was not preclusive in a subsequent wrongful termination suit. See *id*. at 1176-1177. In *Guiden*, the Court notably surveyed an age discrimination case wherein the plaintiff sought to apply collateral estoppel to the reason for her termination. See *Kendall v. C.F. Industries, Inc.*, 624 F. Supp. 1102 (N.D.Ill. 1986). This was based on the fact that the plaintiff had previously applied for unemployment benefits, and the responsible administrative agency held that she was not terminated for misconduct. See *id*. at 1106. The Court declined to apply collateral estoppel, as the standard for "misconduct" as a legitimate reason for termination and "misconduct" as a basis for denying unemployment compensation were not identical. See *id*. ("[W]hen different standards are applied to the same facts in reaching a legal conclusion, the issues are not identical for purposes of issue preclusion.").

The same principle applies here. The standard for penetrating judicial immunity was discussed at length in prior filings of this case:

> There are only two sets of circumstances in which judicial immunity is overcome. First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's role as a judge. See *Forrester v. White*, 484 U.S. 219, 227-229, 108 S. Ct. 538, 98 L. Ed. 2d 555 (1988); *Stump v. Sparkman*, 435 U.S. 349, 360, 98 S. Ct. 1099, 55 L. Ed. 2d 331 (1978). Second, a judge is not immune for actions,

16

though judicial in nature, taken in the complete absence of all jurisdiction. *Stump* at 356-357. This does not mean, however, that judges are liable for actions which are merely beyond their authority. "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority." *Id*. at Syl. Pt. (a). "[W]hether an act by a judge is a 'judicial' one relate[s] to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." *Stump* at 362; see also *Forrester* at 227-229.

J.A. 81. This principle was further expounded upon in *Mireles v. Waco*, 502 U.S. 9, 112 S. Ct. 286, 116 L. Ed. 2d 9 (1991), as follows:

Of course, a judge's direction to police officers to carry out a judicial order with excessive force is not a "function normally performed by a judge." *Stump v. Sparkman*, 435 U.S. at 362. But if only the particular act in question were to be scrutinized, then any mistake of a judge in excess of his authority would become a "nonjudicial" act, because an improper or erroneous act cannot be said to be normally performed by a judge. If judicial immunity means anything, it means that a judge "will not be deprived of immunity because the action he took was in error . . . or was in excess of his authority." *Id*., at 356. See also *Forrester v. White*, 484 U.S. at 227 (a judicial act "does not become less judicial by virtue of an allegation of malice or corruption of motive"). Accordingly, as the language in Stump indicates, the relevant inquiry is the "nature" and "function" of the act, not the "act itself." 435 U.S. at 362. In other words, we look to the particular act's relation to a general function normally performed by a judge, in this case the function of directing police officers to bring counsel in a pending case before the court.

*Mireles* at 12-13.

These standards were not addressed in *In Re Goldston*, because judicial immunity was not in issue in that matter. Because judicial immunity is a defense only in civil suits for damages, a judicial disciplinary proceeding would have no use

17

for that standard.  Neither are any of the rules of the West Virginia Code of Judicial Conduct duplicative of these standards.  See W. Va. CJC 1.1, 1.2, 1.3, 2.2. 2.4(A), 2.4(B), and 2.5.  Thus, the issue sought to be precluded is not identical to any issue decided in the prior proceeding, and the first element of the collateral estoppel determination is unmet.

Likewise, the second element is unmet.  Since the issue sought to be precluded was not addressed in the prior proceeding, it cannot have been "actually litigated and determined." *Ramsay* at 210.  In the same manner, an unaddressed issue cannot have been "necessary to the prior proceeding's decision," leaving the third element unmet. *Id*.  Finally, the Appellant cannot have had "a full and fair opportunity to litigate the issue in the previous suit" when the issue was not addressed in that suit.  *Id*.  The fifth element is therefore also unmet.  Given that four of the five elements of collateral estoppel are unmet, its application is therefore inappropriate, and the Appellee's

Nor can the outcome of *In Re Goldston* preclude Judge Goldston from asserting that she did not undertake search functions.  A "search" is a legal term of art which may carry different meanings in different contexts.

## **RELIEF SOUGHT**

**WHEREFORE**, based on the foregoing, and on the grounds asserted in her Appellant's Brief, the Appellant, the Hon. Louise E. Goldston, respectfully prays

this Honorable Court REVERSE the District Court's denial of her Motion for

Summary Judgment, that this Court find that she is entitled to absolute judicial

immunity, and grant her such other relief as the Court deems just and proper.

**/s/   John P. Fuller**

**Jennifer E. Tully (WV Bar #9356)**
**John P. Fuller (WV Bar #9116)**
**Adam K. Strider (WV Bar #12483)**
**BAILEY & WYANT, PLLC**
**500 Virginia Street, East, Suite 600**
**Post Office Box 3710**
**Charleston, West Virginia 25337**
**T: 304.345.4222**
**F: 304.343.3133**
**jtully@baileywyant.com**
**jfuller@baileywyant.com**
**astrider@baileywyant.com**

<u>**CERTIFICATE OF COMPLIANCE**</u>

1. This brief complies with the type-volume limitation of F. R. App. P. 28.1(e)(2) because it contains a total of 4,836 words, omitting excludable portions.

2. This brief complies with the typeface using requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a) because it has been prepared in 14-Point Times New Roman font text using Microsoft Office.

                     **/s/   John P. Fuller** _____
                     **Jennifer E. Tully (WV Bar #9356)**
                     **John P. Fuller (WV Bar #9116)**
                     **Adam K. Strider (WV Bar #12483)**
                     **BAILEY & WYANT, PLLC**